IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUZANNE PYUN,<br>              Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN, in her capacity as Acting Commissioner, U.S. Social Security Administration,<br>              Defendant. | CIVIL ACTION<br><br><br><br>NO. 16-2633 |

DuBois, J.                                                                                    December 22, 2016

**M E M O R A N D U M**

**I.      INTRODUCTION**

      This is an employment discrimination case arising out of plaintiff Suzanne Pyun's termination following a series of complaints to the Equal Employment Opportunity Commission. Plaintiff alleges a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. against Carolyn W. Colvin, in her capacity as Acting Commissioner of the Social Security Administration. Presently before the Court is defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment. For the reasons that follow, defendant's Motion is denied.

**II.     BACKGROUND**

      The facts of the case as alleged in the Complaint are as follows. Defendant Carolyn Colvin is the Acting Commissioner of the Social Security Administration ("SSA"). Compl. ¶ 7. The SSA employed plaintiff Suzanne Pyun from 1999 until her termination on October 4, 2006. Compl. ¶¶ 7, 46. Plaintiff alleges that she was terminated in retaliation for filing three earlier complaints against the SSA and its employees with the Equal Employment Opportunity Commission ("EEOC"). Compl. ¶¶ 53-57.

1

In 1999, plaintiff began working for the SSA as a Bilingual Korean Service Representative in its Northeast Philadelphia office. Compl. ¶ 14. Plaintiff filed her first EEOC complaint in 2002, alleging that her second-level supervisor Robert Mannion discriminated against her on the basis of national origin and sex when he subjected her to increased scrutiny and monitoring. Compl. ¶ 15. In 2003, plaintiff filed another EEOC complaint, again naming Mannion as "a responsible management official." Compl. ¶ 16. Plaintiff also identified Josephine Pielocik, a SSA District Manager, as "a responsible management official." Compl. ¶ 17. Plaintiff avers that both Mannion and Pielocik were aware that they were identified in the EEOC complaints. Compl. ¶ 18. Plaintiff and the SSA reached a settlement agreement on June 15, 2005, resolving plaintiff's pending EEOC complaints. Compl. ¶ 19. Under the terms of the agreement, plaintiff was assigned to the SSA's Jenkintown District Office, where Pielocik was the District Manager. Compl. ¶¶ 20-21. If plaintiff performed satisfactorily during her initial placement at Jenkintown, she was to be permanently reassigned to the office. Compl. ¶ 20.

Plaintiff alleges that Pielocik "subjected [her] to increased scrutiny and monitoring by conducting formal interview observations" at the Jenkintown District Office. Compl. ¶ 25. During these interview observations, "Pielocik sat near [plaintiff] and observe[d] and [took] notes on interviews [plaintiff] conducted." Compl. ¶ 25. However, Pielocik did not conduct formal interview observations of plaintiff's co-worker Mae Constantino, another Service Representative in the Jenkintown office. Compl. ¶¶ 23, 26. According to plaintiff, Pielocik subsequently asserted that plaintiff did not perform satisfactorily during her initial placement at Jenkintown as "she typed slowly, did not properly answer the phone, and wore jeans on one occasion." Compl. ¶ 27. Based on Pielocik's statements, plaintiff was returned to the Northeast Office on October 20, 2005, as Mannion's subordinate. Compl. ¶ 29.

After her return to the Northeast Office, plaintiff was placed on a Performance Assistance Plan (PAP) on December 15, 2005, under the direct supervision of Lisa McLaughlin. Compl. ¶¶ 30, 32. McLaughlin sat next to the plaintiff to monitor her performance as part of the PAP. Compl. ¶ 34. According to plaintiff, McLaughlin did not observe any mistakes or errors during this supervision. Compl. ¶ 35. McLaughlin was subsequently replaced by Kathleen Tannery, who assumed responsibility for plaintiff's PAP. Compl. ¶¶ 36, 38. On May 1, 2006, plaintiff filed a formal EEOC complaint of discrimination, alleging that she was placed on the PAP as a result of racial discrimination and reprisal. Compl. ¶ 39.

Eight days later on May 9, 2016, plaintiff was placed on a Performance Enhancement Plan ("PEP") due to her alleged failure to pass the PAP. Compl. ¶¶ 40-41. Plaintiff alleges that she did not commit any errors or mistakes during the PEP period. Compl. ¶ 43. Nonetheless, Tannery advised plaintiff on or around September 5, 2006, that she proposed removing plaintiff from her Service Representative position. Compl. ¶ 44. According to Tannery, plaintiff's interviewing skills—including her ability to explain technical provisions, elicit relevant facts, and resolve issues—were unacceptable. Compl. ¶ 44. Plaintiff was subsequently terminated on October 4, 2006. Compl. ¶ 46.

On October 12, 2006, plaintiff filed a grievance through her Union challenging her termination. Compl. ¶ 8. After arbitration proceedings on her termination complaint, the Arbitrator ruled in the SSA's favor on November 14, 2008. Compl. ¶ 9. As required, plaintiff appealed the Arbitrator's decision to the Merit Systems Protection Board ("MSPB"). Compl. ¶ 10. The MSPB affirmed the Arbitrator's ruling on May 11, 2009. Compl. ¶ 10. On June 11, 2009, plaintiff alleges that she "timely filed a Petition for Review to the [EEOC's Office of Federal Operations ("OFO")]." Compl. ¶ 11. Plaintiff additionally avers that she received a

3

decision on October 30, 2015, from the OFO on a separate administrative claim of discrimination, in which "the [OFO] gave notice to [p]laintiff that it was dismissing her Petition for Review" of the MSPB's decision.  Compl. ¶ 12.  According to plaintiff, her Complaint is "timely filed 90 days from the date the [OFO] provided notice to Ms. Pyun that it dismissed her Petition for Review."  Compl. ¶ 13.

Plaintiff filed her Complaint alleging retaliatory termination on January 28, 2016.  Plaintiff seeks reinstatement to the same or similar position from which she was terminated, back pay, compensation for lost benefits, compensatory damages of $300,000 for emotional distress, and attorney's fees and costs.

Presently before the Court is Colvin's Motion to Dismiss or, in the Alternative, for Summary Judgment.[1]  Defendant argues that plaintiff failed to exhaust her administrative remedies by (1) failing to timely file her appeal of the MSPB's decision and (2) not filing this civil action within 30 days of receiving notice that the OFO would not consider the MSPB's decision.

### III.  APPLICABLE LAW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to respond to a pleading by filing a motion to dismiss for "failure to state a claim upon which relief can be granted."  To survive a motion to dismiss, the complaint must allege facts that "'raise a right to relief above the speculative level.'"  *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[1] The Court declines to convert defendant's Motion to Dismiss to a Motion for Summary Judgment because the parties have not "had a full opportunity to conduct discovery."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. *Iqbal*, 556 U.S. at 679. The court then assesses the remaining "'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether the complaint states a plausible claim for relief. *Id.*

**IV. DISCUSSION**

The Civil Service Reform Act ("CSRA") of 1978 establishes a structure and procedures for federal employees to resolve grievances and complaints related to their employment. *Bush v. Lucas*, 462 U.S. 367, 385 (1983). Employees, like plaintiff, that are covered by collective bargaining agreements "may raise [their complaint] under a statutory procedure or the negotiated procedure, but not both." 5 U.S.C. § 7121(d). "Once the employee has made an election as to which administrative procedure [statutory or negotiated] to pursue, [she] must fully exhaust the administrative remedy prior to bringing suit in a judicial forum." *Gill v. Summers*, No. 00-CV-5181, 2001 WL 283150, *3 (E.D. Pa. March 20, 2001). In this case, plaintiff chose to challenge her removal through the negotiated grievance process. Compl. ¶ 8. Plaintiff was therefore required to exhaust her administrative remedies through the negotiated grievance process before filing a civil action.

Individuals, like plaintiff, who use the negotiated grievance process and wish to appeal the resulting arbitration decision are required to follow a series of steps. *See Kloeckner v. Solis*, 133 S. Ct. 596, 601 (2012) ("When an employee complains of a personnel action serious enough to appeal to the MSPB [such as a termination] *and* alleges that the action was based on

discrimination, she is said (by pertinent regulation) to have brought a mixed case. The CSRA and regulations of the MSPB and [EEOC] set out special procedures which govern such cases—different from those used when the employee either challenges a serious personnel action under the CSRA alone or attacks a less serious action as discriminatory.") (internal citations omitted). The parties do not dispute that plaintiff followed the proper steps to appeal the arbitration decision on her termination claim to the MSPB.

To appeal an adverse decision by the MSPB, a plaintiff is required to (1) file a civil action within 30 days of receipt of the MSPB's decision, 29 C.F.R. § 1614.310(b), or (2) petition the EEOC's OFO to consider MSPB's decision within 30 days of receiving that decision, 5 U.S.C. § 7702(b)(1). If an employee elects to petition the EEOC's OFO for review of a MSPB decision, the plaintiff may file a civil action after receiving a judicially reviewable decision from the OFO. However, the civil action must be filed "[w]ithin 30 days of receipt of notice that the [OFO] has determined not to consider the decisions of the MSPB." 29 C.F.R. § 1614.310(c); *see also* 5 C.F.R. § 1201.175(b).

In her Motion to Dismiss, defendant contends that plaintiff procedurally defaulted at two steps in the appeals process for her termination claim. First, defendant asserts that plaintiff did not file her appeal of the MSPB's decision to the OFO within the required 30 days. Second, defendant argues that, even assuming the OFO's October 29, 2015 decision was a judicially reviewable decision on plaintiff's termination claim, plaintiff failed to file this civil action within the required 30 days of that October 29th decision. Finally, defendant asserts the equitable defense of laches.

The Court rejects defendant's arguments at this early stage of the case. As to the appeal of the MSPB's unfavorable decision, plaintiff alleges that she timely filed a Petition for Review

6

of the MSPB's decision with the OFO on June 11, 2009, within the required 30 day period after the MSPB issued its decision on May 11, 2009. Compl. ¶ 11. To rebut plaintiff's assertion that she timely filed her Petition, defendant references the OFO's October 29, 2015 decision on a separate administrative matter that discusses plaintiff's earlier Petition for Review concerning the termination claim.[2] In the October 29, 2015 decision, the OFO "decline[d] to consider whether to concur or differ with the MSPB's findings regarding [the termination]," as the OFO never docketed a Petition for Review from plaintiff as to her termination. Mot. to Dismiss, Ex. C, EEOC OFO Decision ("OFO Decision"), October 29, 2015, 13. The OFO acknowledged that plaintiff submitted "a postal return receipt initialed by a person in the EEOC Headquarters' mail room, showing receipt on June 16, 2009, of correspondence sent by the union and addressed to the [OFO]." *Id.* However, the OFO stated "[a]ssuming the correspondence was a petition for review, we decline to accept it at this point." *Id.* In declining to accept the Petition, the OFO determined that "laches attaches to [plaintiff's] petition to review the MSPB's May 2009 decision. We make this finding because [plaintiff] did not act diligently in pursuit of her petition to review case." *Id.*

Plaintiff avers in her Complaint that she timely filed her Petition. Furthermore, in its October 29, 2015 decision, the OFO references evidence, specifically a postage receipt, that supports plaintiff's allegation that she timely filed. At this stage of the case, the Court "must accept all of the complaint's well-pleaded facts as true." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Morevoer, the OFO decision does not directly contradict plaintiff's

---

[2] The Court considers the October 29, 2015 OFO decision as it is an undisputedly authentic document attached to defendant's Motion to Dismiss, as well as plaintiff's Response to the Motion to Dismiss, and plaintiff relies on the document in her Complaint to state her claim. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

assertion that she filed the Petition for Review during the required time period. Based on the facts alleged by plaintiff, the OFO failed to docket or process her Petition. This Court will not "penalize a plaintiff for the possible misconduct of the EEOC." *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 966 (3d Cir. 1978) ("If the EEOC's investigation is unreasonably narrow or improperly conducted, the plaintiff should not be barred from [her] statutory right to a civil action.").

The Court declines to consider whether plaintiff exercised reasonable diligence in pursuing her Petition for Review on the limited information properly before it. *See Brown v. Crowe*, 963 F.2d 895, 900 (6th Cir. 1992) ("The errors of administrative agencies should not be visited upon the plaintiff, where he did all that he could have reasonably done to file a charge of discrimination in an otherwise timely manner."). Based on the limited record, the Court determines that plaintiff has plausibly alleged she timely filed her Petition for Review of the MSPB decision. Accordingly, the Motion to dismiss plaintiff's retaliatory termination claim against the SSA is denied on this ground.

The Court turns to defendant's second administrative exhaustion argument—that plaintiff failed to file this civil action within 30 days of receiving the OFO's October 29, 2015 decision. An employee must file a civil action within 30 days of receiving notice of a judicially reviewable decision by the OFO in matters appealed from a MSPB decision. 29 C.F.R. § 1614.310(c); *see also* 5 C.F.R. § 1201.175(b). Defendant argues that plaintiff received notice of the OFO decision on October 30, 2015 and was therefore required to file this civil action within 30 days of October 30, 2015. As plaintiff filed this civil action on January 28, 2016, defendant contends that the civil action should be dismissed as untimely.

Plaintiff responds by pointing to the fact that the October 29, 2015 OFO decision states "[you] have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision." Defendant attempts to limit this statement, arguing that the 90-day deadline was applicable only to plaintiff's separate administrative claim before the EEOC OFO at that time and does not apply to the claim for retaliatory termination.

In response, plaintiff invokes equitable tolling. "[E]quitable tolling may be appropriate (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *New Castle Cty. v. Halliburton NUS Corp.*, 111 F.3d 1116, 1125-26 (3d Cir. 1997). Plaintiff must only plead facts, which if true, would show the applicability of equitable tolling. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1391-92 (3d Cir. 1994) ("We find that these allegations, taken as true and giving [the plaintiff] the benefit of all reasonable inferences, are sufficient to activate the doctrine of equitable tolling.").

Plaintiff contends that the OFO's decision explicitly states she had 90 days to file this civil action. The OFO's decision supports that assertion. OFO Decision, 16. Plaintiff filed this civil action within 90 days of receiving the OFO's decision. Accordingly, plaintiff has pled sufficient facts to suggest that the OFO's statement "misled plaintiff into believing that she had done everything required of her." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999) (holding that equitable tolling was appropriate when a court misled plaintiff into believing that she had met all requirements); *see also Robinson v. Dalton*, 107 F.3d 1018, 1023 (3d Cir. 1997) ("[A] plaintiff may justifiably rely on written communications from the EEOC

9

. . . ."). On the limited record before it, the Court concludes that plaintiff has pled sufficient facts to warrant the application of equitable tolling to the 30-day requirement for filing of civil actions after a judicially reviewable decision by the OFO.

Defendant also argues that the equitable defense of laches bars plaintiff's Complaint. "Title VII actions are subject to the equitable defense of laches when [a] plaintiff has not fulfilled his or her minimum responsibilities in pursuing a claim." *Waddell v. Small Tube Prods., Inc.*, 799 F.2d 69, 74 (3d Cir. 1986). The elements of laches are "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Id.* The party asserting the defense bears the burden of proof. *Id.* In this case, defendant contends that plaintiff did not diligently pursue her termination claim as she failed to contact the OFO concerning her Petition for Review for several years and that the defendant is prejudiced by now having to defend itself against a claim from 2006. Defendant correctly argues that the United States Court of Appeals for the Third Circuit stated "plaintiffs have some obligation to monitor the progress of their charge and do not have the absolute right to await termination of EEOC proceedings . . . ." *Id.* at 77. However, the Third Circuit qualified this statement with the phrase: "whether the circumstances warranted the delay in a particular case requires an ad hoc determination." *Id.* At this early stage of the case, the Court lacks sufficient evidence to determine if the equitable defense of laches should bar plaintiff's claim for retaliatory termination.

## V.     CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss is denied. An appropriate order follows.